Filed 3/24/26; modified and certified for publication 4/20/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Appellant, <br><br>     v. <br><br> KEENA TELOCA LANDRINE, <br><br>     Defendant and Respondent. | H052071 <br> (Santa Clara County <br>  Super. Ct. Nos. C2010146, C2014427, <br>  C2105263, C2106393) |

Defendant Keena Teloca Landrine was placed into a mental health diversion program under Penal Code section 1001.36. (Subsequent undesignated statutory references are to the Penal Code.) Even though Landrine committed several dozen crimes while in the diversion program, the trial court found that she satisfactorily performed because of "amazing progress" made after returning to custody and dismissed charges against her. The district attorney appeals, arguing that the trial court abused its discretion in finding satisfactory performance despite repeated violations of a requirement of diversion. As explained below, we agree. The mental health diversion statute does not authorize trial courts to find satisfactory performance unless a defendant substantially performs the requirements imposed on diversion, which Landrine did not. Accordingly, we reverse the order dismissing the charges against Landrine and remand for further proceedings.

# I. BACKGROUND

The facts underlying the charges against Landrine are derived from police reports and the ensuing criminal complaints.

## A. The Initial Offenses

This case arises out of a crime spree in which Landrine entered businesses, hospitals, other health care facilities, and even schools under false pretenses and stole personal property from employees and residents.

### 1. Docket No. C2014427

On June 23, 2020, Landrine entered a locked employee lounge at a health care facility and took cash, credit cards, a driver's license, and other items from employees' bags. Sheriff's deputies apprehended Landrine several hours later with the missing items. The complaint in docket No. C2014427 charged Landrine with second degree burglary (§ 460, subd. (b)), identity theft (§ 530.5, subd. (c)(2)), and concealing stolen property (§ 496, subd. (a)).

### 2. Docket No. C2010146

In July 2020, Landrine entered several patient rooms at a hospital and took cash and a cellphone, but police apprehended her outside the hospital. The complaint in docket No. C2010146 charged Landrine with first degree burglary (§ 460, subd. (a)) and grand theft of personal property (§ 487, subd. (a)).

### 3. Docket No. C2106393

In January 2021, Landrine entered a residence at a senior living facility. Landrine claimed to be the resident's caregiver, but the resident said she had no caregiver and tried to use her walker to block Landrine from entering. However, Landrine pushed past the resident, rifled through her belongings, and stole her wallet, credit card, checkbooks, $50 in cash, four pairs of earrings, and two rings. Landrine later made over $400 worth of purchases with the credit card. The same day, Landrine infiltrated another resident's

home by pretending to be a maintenance worker, and she stole cash and a silver ring. Two weeks later, Landrine entered a third resident's home and claimed to be a security employee, but the resident confronted her, and staff escorted her off the property before she could take anything.

The next month, March 2021, Landrine encountered a 14-year-old who had snuck out in her mother's vehicle but had run out of gas. After volunteering to help, Landrine stole the minor's purse and wallet, which had contained the passport, other identification, and a credit card of the minor's mother. Landrine later attempted to withdraw cash with the card.

A complaint in docket No. C2106393 addressed all these offenses and charged Landrine with identity theft (§ 530.5, subd. (c)(1)), attempted grand theft (§§ 487, subd. (a), 664), and three counts of first degree burglary (§ 460, subd. (a)).

### 4. Docket No. C2105263

In April 2021, a health care worker discovered her wallet was missing and her credit card had been used to make unauthorized purchases. She found surveillance footage of Landrine at her workplace, and police officers obtained footage of Landrine at the stores where the purchases had occurred. A complaint in docket No. C2105263 charged Landrine with identity theft (§ 530.5, subd. (c)(2)) and second degree burglary (§ 460, subd. (b)).

## B. Diversion

### 1. The Requirements Imposed on Diversion

In August 2021, Landrine applied for mental health diversion in the four cases against her, and in September 2021 the trial court granted diversion. In requesting diversion, Landrine's counsel stated that Landrine would be in a program that is "intense with high expectations," and "if she relapses, if she begins to not take her medication, if there is any serious behavior, we'll be right back with her facing four cases with multiple

3

strikes." In granting diversion, the trial court warned Landrine that "[w]hat your attorney said is true. Relapsing, committing another crime, walking away from treatment—any of those, and you will [be] done with mental health diversion." And at the end of the hearing, the trial court reiterated that "any deviation or walking away from treatment, any relapse or problem like that [and it] is very likely you will be terminated."

### 2. *Compliance with the Requirements*

Landrine allegedly committed dozens of offenses while on diversion, many following the same pattern as those charged in the complaints pending against her.

In January 2022, police arrested Landrine for stealing items from two stores. Over the next several months, she also repeatedly stole from employee areas in stores and medical centers. In March, she entered a health care facility run by the same company that ran the facility where she was residing and stole a wallet from an employee's office. In May 2022, posing as a substitute teacher, Landrine tried to enter an elementary school, two middle schools, and a high school. A week later, Landrine put on a name tag, claimed to be a school district official, and gained access to another elementary school.

Landrine was arrested in January but released to her residential program. Later, she was charged for the crimes detailed above, as well as a February 2021 incident in which she walked into a preschool and rummaged through various cabinets. However, in December 2022, after several months without apparent new offenses, Landrine was arraigned and released on her own recognizance.

At a hearing in early January 2023, Landrine admitted a drug relapse, but, after being discharged from her residential treatment program, she refused referral to a detox program. At a hearing later that month, after detailing Landrine's new offenses, the court admonished Landrine that, "while you're out of custody, I need you to be not doing new crimes. . . . [¶] No more new crimes."

4

Although Landrine pledged to do better at the hearing, she soon committed additional crimes. Around midnight on January 9, 2023, the day of the first hearing, Landrine entered an elder care facility posing as a nurse and asked a resident if she needed help, took the resident's credit cards, and made purchases with them. A month later, in February 2023, Landrine infiltrated a care facility posing as a nurse, entered a resident's room, and stole cash, credit cards, and identification. In March 2023, Landrine pretended to be a delivery driver to infiltrate a charity and stole from employees there.

In late March, Landrine was remanded without bail.

### 3. *Performance in Custody*

In custody, Landrine's performance was exemplary. Landrine participated in the Reentry Correctional Program. According to a progress report from the Sheriff's Office, Landrine was in "excellent standing," had "perfect attendance," and exhibited "leadership and service in the classes and program dorm with both peers and staff members." Landrine completed "37 weeks of uninterrupted program participation," during which she met regularly with her substance-abuse sponsor and her chaplain, completed 15 therapy sessions, received instruction including life skills and advice on healthy relationships, and completed three college-level courses.

### C. **The Trial Court Ruling**

In January 2024, Landrine applied for mental health diversion on the new charges against her, and the following month the trial court held a hearing concerning that application and Landrine's performance on diversion for the prior charges against her.

In support of her application, Landrine submitted the progress report from the Sheriff's Office, parts of which the trial court read into the record. Landrine's social worker testified that she had grown considerably during her recent incarceration and was moving in "a very positive, value-driven direction." In addition, Landrine's counsel asserted that her conduct since back in custody was unique and spoke very loudly in her

5

favor. Indeed, counsel asserted that in her 24 years with the Public Defender's Office she had "never seen anything like . . . this level of treatment engagement and treatment while in jail."

In its ruling, the trial court noted that it "could terminate Mental Health Diversion by virtue of the fact that new felonies were committed." Nonetheless, the court stated that it faced a "really difficult" choice. It observed that "[w]hat the law and the legislatures don't take into consideration is human potential and the possibility to change" and that Landrine's most recent reports showed that she was "at the cusp of making huge lifetime changes." Accordingly, the trial court found that Landrine had successfully completed mental health diversion, dismissed the older cases pending against her, and granted diversion in the newer cases. The court explained to Landrine that it was doing so "because in your efforts in custody this past year, you have made amazing progress, and that kind of progress can't go unnoticed."

The district attorney filed a timely notice of appeal.

## II. DISCUSSION

The district attorney contends that the trial court should not have dismissed the 2020 and 2021 complaints against Landrine because she failed to comply with the requirements imposed on diversion by continuing to commit crimes and because the trial court found compliance based on irrelevant factors. We review the trial court's ruling that Landrine successfully completed diversion for abuse of discretion. (*People v. Moine* (2021) 62 Cal.App.5th 440, 448-449.) As explained below, we agree that the trial court abused its discretion in concluding that Landrine performed satisfactorily in diversion despite committing numerous crimes in violation of the express prohibition against doing so imposed as a condition of diversion.

## A. Mental Health Diversion

We begin by briefly reviewing the pretrial mental health diversion statute, which the Legislature enacted in 2018. (Stats. 2018, ch. 34, § 24.) Mental health diversion is a specialized form of probation offering a second chance to individuals " 'minimally involved in crime and maximally motivated to reform.' " (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 886.) In diversion, prosecution is postponed "to allow the defendant to undergo mental health treatment" (§ 1001.36, subd. (f)(1)) with the goals of mitigating the entry and reentry of individuals with mental health disorders into the criminal justice system and providing treatment that meets the unique needs of such individuals while protecting public safety. (§ 1001.35, subds. (a) & (c).)

A trial court may consider a defendant's suitability for diversion if the defendant meets two threshold requirements. First, defendants charged with certain especially serious offenses such as murder, rape, or sexual assaults may not be placed into a diversion program. (§ 1001.36, subds. (a), (d).) Second, defendants are eligible for mental health diversion only if they have been diagnosed with a recognized disorder such as schizophrenia or bipolar disorder (but not antisocial personality disorder or pedophilia), and there is no clear and convincing evidence that the disorder was not a motivating, causal, or contributing factor in the offense. (§ 1001.36, subd. (b)(1) & (2).)

If a defendant satisfies the threshold requirements for diversion, the trial court considers the defendant's suitability. (§ 1001.36, subd. (c).) A defendant generally is suitable for diversion if diversion would not pose an unreasonable risk of danger to public safety and three additional conditions are satisfied: (1) a qualified mental health expert opines that "the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior" would respond to treatment, (2) the defendant consents to diversion and waives a speedy trial; and (3) the defendant agrees to comply with treatment as a condition of diversion. (§ 1001.36, subd. (c)(1).)

7

If a defendant performs satisfactorily in diversion, at the end of the period of diversion the trial court must dismiss the charges against the defendant, and the defendant's arrest is deemed never to have occurred. (§ 1001.36, subd. (h).) However, trial courts do not have unfettered discretion to determine that a defendant has performed satisfactorily in diversion. To the contrary, the diversion statute expressly states that "[a] court may conclude that the defendant has performed satisfactorily if the defendant [1] has substantially complied with the requirements of diversion, [2] has avoided significant new violations of law unrelated to the defendant's mental health condition, and [3] has a plan in place for long-term mental health care." (*Ibid.*)

Although the mental health diversion statute does not define the term "requirements of diversion," the Supreme Court has recognized that "requirements for diversion" are analogous to probation conditions. The mental health statute was intended to "remedy . . . the inability of the trial court to 'order mental health treatment, relevant counseling, or adherence to a medication program unless the [defendant] was first convicted, and then placed on probation or sent to jail at county expense.' " (*People v. Braden* (2023) 14 Cal.5th 791, 821, italics omitted.) Accordingly, the Legislature understood that, "under the proposed legislation to enact [Penal Code] section 1001.36, ' "a court may . . . impose the same rehabilitative probationary conditions on a defendant it would have imposed had the defendant been convicted (*including that the defendant comply with a mental health treatment, plan, obey all laws*, and make restitution to any victims) . . . ."' " (*Id*. at p. 822, italics added & omitted; see also *People v. Lent* (1975) 15 Cal.3d 481, 486 ["A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' "], superseded by constitutional amendment on other grounds as stated in *People v. Moran* (2016) 1 Cal.5th 398, 403, fn. 6.)

8

**B. Application**

Landrine did not perform satisfactorily in diversion because she failed to satisfy the first criterion for satisfactory performance: substantial compliance with the requirements imposed on diversion.

### 1. *The Requirements Imposed on Diversion*

In keeping with the Legislature's intent in enacting the mental health diversion statute, the trial court imposed three requirements of diversion.

First, Landrine was required to stop abusing drugs. In arguing that Landrine was suitable for mental health diversion, her counsel stated that Landrine would be in a program that is "intense with high expectations," and "if she relapses, . . . , we'll be right back with her facing four cases with multiple strikes." Accordingly, in granting diversion, the trial court warned Landrine that "what your attorney said is true": "[r]elapsing" would result in her being "done with mental health diversion." At the end of the hearing, the trial court reiterated that "any relapse or problem like that [and it] is very likely you will be terminated."

Second, Landrine was required to continue taking her medication and participating in treatment. In addition to recognizing that diversion would terminate and she would face prosecution if she relapsed, Landrine's counsel recognized that she would face prosecution "if she begins to not take her medication." The trial court likewise told Landrine that "walking away from treatment . . . and you will be done with mental health diversion" and "walking away from treatment" and "very likely you will be terminated."

Third, Landrine was prohibited from committing new crimes. Her counsel acknowledged that diversion would terminate "if there is any serious behavior." When the trial court granted diversion, it told Landrine that her counsel was correct that "committing another crime" would result in her being "done with mental health diversion." In addition, at a hearing in January 2023, the trial court reiterated that "while

9

you're out of custody, I need you to be not doing new crimes," and Landrine pledged to comply with this requirement.

### 2. *Compliance*

Landrine violated all three requirements imposed on diversion.

First, Landrine did not stop abusing drugs. As Landrine expressly admitted at a hearing on January 9, 2023, she "messed up" and "relapsed" into drug use.

Second, Landrine did not continue participating in treatment. As her counsel acknowledged, when treatment staff offered to help Landrine enter a detox program, she "did decline, thinking she could move forward without substance abuse treatment."

Third, Landrine repeatedly violated the prohibition against committing new crimes. Indeed, during diversion, prosecutors filed six complaints charging Landrine with 43 new offenses. These were not minor offenses, and they followed Landrine's old pattern. She allegedly snuck into back offices, employee break rooms and other restricted areas, stole wallets and other personal property, and made implausible claims of coercion. On several occasions, Landrine also allegedly entered the rooms of elderly care facility residents and stole from them in their presence. Finally, claiming to be, among other things, a substitute teacher, Landrine entered two middle schools, two elementary schools, a high school, and a preschool under false pretenses. Four of these charged offenses occurred after January 2023 when the trial court admonished Landrine "to be not doing new crimes."

In light of these violations, and in particular Landrine's literally dozens of violations of the prohibition against committing new crimes, Landrine plainly did not comply—substantially or otherwise—with the requirements imposed on diversion.

### 3. *The Trial Court's Rationale*

The trial court recognized that, "by virtue of the fact that new felonies were committed," it could terminate Landrine's mental health diversion and reinstate the four

10

complaints stayed as a result of the diversion. Nonetheless, the court found that Landrine had successfully completed the mental health diversion program because she had "made amazing progress and that kind of progress can't go unnoticed." We do not question Landrine's progress or the achievement that constitutes. However, as explained below, the trial court lacked authority to ignore Landrine's repeated violations of the requirements imposed on her diversion.

As noted above, the Legislature did not leave the decision whether to dismiss criminal charges after a mental health diversion program to the trial court's unfettered discretion. Instead, the mental health diversion statute expressly states that a trial court may conclude that a defendant has performed satisfactorily only if three conditions are satisfied: "A court may conclude that the defendant has performed satisfactorily if the defendant [1] has substantially complied with the requirements of diversion, [2] has avoided significant new violations of law unrelated to the defendant's mental health condition, and [3] has a plan in place for long-term mental health care." (§ 1001.36, subd. (h).) One of those conditions is that the defendant "substantially complied with the requirements of diversion." (*Ibid*.) As Landrine failed to do this, the trial court had no authority to conclude that Landrine successfully completed diversion.

In reaching this conclusion, we do not mean to discount Landrine's accomplishment in treatment. The record shows that that it was highly unusual and exemplary. However, the Legislature has chosen to structure the mental health diversion statute in broad strokes that do not permit courts to consider such accomplishments in the face of repeated, serious violations of the requirements of diversion. While this undoubtedly will come as a disappointment, we encourage Landrine to continue her laudable efforts at self-improvement.

Because we conclude that Landrine did not satisfactorily perform based on the crimes committed while on diversion, we do not reach the district attorney's argument

11

that the trial court improperly relied on factors such as Landrine's performance in custody.

### III. DISPOSITION

The order of February 6, 2024 dismissing charges in Santa Clara Superior Court dockets C2010146, C2014427, C2105263, and C21063939 is reversed, and this matter is remanded for further proceedings on those charges.

_____
BROMBERG, J.

WE CONCUR:


_____
DANNER, ACTING P. J.


_____
CHUNG, J.*


*People v. Landrine*
H052071

---

    **\*** Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Appellant,<br><br>　　v.<br><br>KEENA TELOCA LANDRINE,<br><br>　　　Defendant and Respondent. | H052071<br>(Santa Clara County<br>Super. Ct. Nos. C2010146, C2014427,<br>C2105263, C2106393)<br><br>ORDER MODIFYING OPINION<br>AND GRANTING REQUEST<br>FOR PUBLICATION<br>(NO CHANGE IN JUDGMENT) |

BY THE COURT:

It is ordered that the opinion herein filed on March 24, 2026 be modified as follows:

On page 7, in the second sentence of the first full paragraph, the word "assault" is to replace the word "assaults."

On page 8, in the second sentence of the second full paragraph, the word "diversion" is to be inserted between the words "mental health" and "statute."

There is no change in the judgment.

The opinion in the above-entitled matter filed on March 24, 2026 was not certified for publication in the Official Reports. The court has received requests for publication under California Rules of Court, rule 8.1120(a) from the California District Attorneys Association and from the District Attorneys for the Counties of Alameda, Contra Costa, Marin, Orange, Riverside, San Bernardino, San Diego, San Mateo, Santa Clara, Sonoma,

and Yolo.  After reviewing the requests, it appears the opinion meets the standards for publication under California Rules of Court, rule 8.1105(c).  The court therefore orders that the opinion be published in the Official Reports.

_____
BROMBERG, J.



_____
DANNER, ACTING P. J.



_____
CHUNG, J.*



*People v. Landrine*
H052071

_____

**\*** Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

3

Trial Court:                                       Santa Clara County
                                                   Superior Court Nos.:  C2010146,
                                                   C2014427, C2105263, C2106393


Trial Judge:                                       The Honorable Julianne Sylva


Attorney for Plaintiff and Appellant              Jeffrey F. Rosen,
The People of the State of California:            District Attorney, County of Santa Clara

                                                   S. Sheryl Leung
                                                   Deputy District Attorney


Attorneys for Defendant and Respondent            Michelle D. Spencer,
Keena Teloca Ladrine:                             under appointment by the Court
                                                   of Appeal for Appellant


*People v. Landrine*
H052071